Next up, we have Patterson v. Georgia Pacific, and that is case number 20-12733. We'll hear first from Mr. Kastorf. Thank you, Your Honor. May it please the court, my name is Kurt Kastorf, and I represent the appellate Marie Patterson. Title VII's anti-retaliation provision includes both an opposition clause and a participation clause. The district court granted summary judgment here because it believed that Ms. Patterson could not proceed under the opposition clause. The district court's reasoning as to the opposition clause raises important questions about the scope of Title VII on which circuit courts have expressed conflicting opinions, and based on the seriousness of those questions, I tend to spend most of my presentation subject to the panel's discretion addressing those points. However, I first want to flag that Ms. Patterson's claim is alternatively cognizable under the participation clause, an issue left entirely unaddressed by the district court. For that reason, regardless of how the court interprets the opposition clause, the case is due to be remanded for trial on the participation clause. The district court had two bases for granted summary judgment. First, it adopted the manager rule from FLSA jurisprudence. Second, it held that opposition must be due to practice by a current employer, not a prior employer. The district court's attempt to adopt the manager rule ignores the plain language of the opposition clause, which applies to, quote, any employee. For that reason, the EEOC has consistently advised employers that managers are, in fact, covered by the opposition provision. And the application of the manager rule also runs contrary to Title VII's broad remedial purpose by discouraging the very employees best positioned to stamp out discrimination of their companies from speaking out. In part for these reasons, every circuit court that has issued a precedential opinion on the issue has concluded that the manager rule does not apply. Against that backdrop, we believe that a single unpublished opinion of this court, to the contrary, is not sufficiently compelling to warrant this court creating a circuit split on the issue. The Brush decision, decided as an unpublished panel opinion of this court, contains relatively little analysis on this question, and it never discusses the critical fact that the text of the opposition clause applies to, quote, any employee. The Supreme Court has, in fact, in the Crawford case, said that opposition should take its ordinary meaning and that virtually any act by an employee speaking on discrimination constitutes opposition. Mr. Kassdorff, would we even have to decide here whether the manager rule applies if, because it seems to me clear that Ms. Patterson stepped outside of her role by testifying in a deposition in another, in a case that didn't concern her employer. Is that right? Yes, that's right. I think that there's two separate acts that could be cognizable under the opposition clause, and I think that appellee tends to focus only one of them. The first is that Ms. Patterson was called into a meeting at her prior employer and asked about the potential termination, and she said, don't do this termination. You're going to have a pregnancy discrimination problem. You need to consult with a lawyer. We would submit that that by itself is opposition, and that raises a closer question of whether the court needs to decide the management rule. But regardless, her participation in the deposition was also an act of opposition as she testified. First of all, she participated in the deposition and provided testimony that was helpful to the plaintiffs and was, in fact, asked by plaintiff's counsel to participate in the deposition, and she represented to her current employer that she had testified on behalf of the plaintiff, and that specific statement, the statement to her current employer that she had opposed pregnancy discrimination, is the statement that she believes is the reason that she's retaliated against. And so I'm not sure the per se under the facts here. But for the court to deny the claim, I think certainly it would need to adopt some reading of the opposition clause that applies to certain circumstances in which a conduct by a manager meets the ordinary definition of the term opposition and yet nonetheless is carved out because that action was taken by a manager, by an HR personnel, or by a lawyer, and that position is not supported by the text of Title VII or by the Supreme Court's decision in Crawford that says opposition has its ordinary meaning. The closest the panel and Brush comes to addressing the lack of a textual support for the manager rule is to suggest that because a manager is not an agreed party, their opposition is not to the underlying allegation of discrimination, but instead that the procedures of internal investigation conducted by her employer. As an initial matter, we think that reading is inconsistent with Crawford, which says that virtually any opposition, any statement by an employee on discrimination constitutes opposition because it meets the plain definition of the term opposition. According to Ms. Patterson's testimony, she told her employer, her prior employer, not to fire the employee because doing so could constitute pregnancy discrimination. And that clearly fits within the ordinary definition of the term opposition. But in addition, as Judge Pryor, as you noted, there is an additional step here, which is that she then participated in a proceeding. She attended a deposition and she did something outside of her normal role as an HR manager. And her statements in that deposition are supportive of the plaintiff's case and therefore, even more clearly constitute opposition. The district court's alternative conclusion was that an employee's opposition must be to a practice by her current employer. And here, the appellee all but abandons this appeal. The appellee's brief has quite literally a single footnote that contains no analysis and says the district court was correct. But the opinion of the district court likewise finds no support in the text of the statute, which applies to quote any unlawful practice. And again, the EEOC, which is entitled to at least some deference, disagrees with the district court's interpretation, which would chill employees seeking new job opportunities from speaking up about illegal practices in the workplace. And again, the circuits that have addressed this question, including this court in an unpublished opinion, have rejected the district court's position. In addition, even if the district court were correct as to both of its reasons, it erred in granting summary judgment because its conclusions apply only to the anti-retaliation provisions opposition class. But because Patterson was retaliated against for participation in a deposition, she has an independent claim under the participation clause under which she should be allowed to proceed. And appellees have scant response to this position. They appear to suggest that if she was discriminated against because of the content of what she said is the deposition, she therefore has no participation claim. But the suggestion that she could have engaged in opposition during her participation means only that she has both an opposition claim and a participation claim. It does not somehow void her ability to bring a participation claim. Appellees also suggest that that argument hasn't been fairly presented in the briefs, but we simply disagree. The complaint contains allegations that she was retaliated against for her participation in the deposition. Her summary judgment motion makes the same point. And she included a lengthy affidavit that continued that includes paragraphs that her participation in the deposition was the reason for her termination. Finally, I note the Georgia-Pacific includes extensive arguments in its brief of appellees that the summary judgment could be affirmed on alternative grounds. We think that these issues are best addressed by the district court in the first instance, because they turn on factual questions related to the contents of depositions and transcripts. And in addition, in at least one case, they also involve the discovery dispute. Ms. Patterson contends that the reason she doesn't have any evidence of a document's existence is because it's listed on the other side of its privilege log. These seem like issues that should, in the first instance, be addressed to the district court. With that being said, I do want to make myself available to questions, because we think on the merits, those arguments fail. And so if the court would like me to address any of those and explain kind of what the factual underpinning of the claim is, I'd be happy to do so. Otherwise, I will reserve my time for rebuttal. Thank you, Your Honors. All right. Thank you, Mr. Kastorf. We'll hear from Ms. Holston. May it please the court. My name is Yonda Layla Neely Holston, and I represent Appellees, Georgia-Pacific LLC, and Alabama River Cellulose LLC. The trial court's grant of summary judgment was sound and should be affirmed because there are no genuine issues of material fact that would allow Ms. Patterson's case to proceed to a jury. Ms. Patterson failed to introduce any evidence of pretext, did not establish a crime-of-basin case for Title VII pregnancy retaliation as a matter of law, and attempted to assert claims that are not within the scope for EEOC charge. I thought on the pretext issue, counsel, that she showed how other disciplinary matters had been handled differently. She showed she was offered $50,000 to keep quiet, not file anything where other people who had been fired weren't. She showed, if you view the evidence, and like most several of her, which we must, of course, that investigations of excessive absences had been conducted differently in the past than the one involving her was. And she also showed the OIC, now I understand, and I'm of course paraphrasing, comment by the HR head when he found out she testified on the employee's side instead of the employer's side in the deposition. That sounds a lot like a genuine issue of material fact for the jury to me. Well, Your Honor, with other people weren't, and she was a senior HR manager. She worked in HR, and she filed an affidavit to that effect, and I think testified some in deposition to that effect, did she not? She didn't testify to it as being pretext, but she did testify that she was offered severance when she terminated and did not- I thought she testified that other employees were treated differently and that other investigations into excessive absences were handled differently. Your Honor, that's not consistent with my recollection of the record. I know she did testify that she felt that hers should have been handled differently. She testified that her supervisors should have looked in her calendar, that her supervisors should have done a number of things, but Your Honor, as you know, that is just Ms. Patterson substituting her business judgment for that of Georgia-Pacific's, and as this court has said, the plaintiff- Yes, but you would agree, would you not, that if there is evidence, even from the party, the plaintiff, if there's evidence that other people who were disciplined were subjected to more deliberate proceedings than she was, that is evidence of pretext. Your Honor, if she were in fact subject to more higher standards than other people, that would have been, but she was very unique- Not necessarily standards counsel, it's the procedure. If they say we investigated her and found that she had been out too many times, or out when she didn't take leave, and she comes in and says they didn't follow the procedures that they follow with everybody else they disciplined or terminated, and they made an exception with me and got rid of me by taking shortcuts, that's evidence of pretext, is it not? Your Honor, that would be evidence of pretext, but that is not in the record here. Ms. Patterson, in addition, Ms. Patterson had a number of other issues that factored into her termination. As I mentioned, she was a senior HR manager, and so at the time of her termination, there had been a lot of union organizing noise at ARC, and so she was called upon to help craft a response to that union organizing noise, and she did not do so in a timely manner. She testified that she understood that the company, quote, wanted it sooner because of the union noise, and then she proceeded to go on vacation and be out of the office and not actually present her part of the response plan until July 19 of 2017. So it was a combination of issues, Your Honor, that resulted in her termination, and Ms. Patterson- Counsel, I'm sorry, just getting back to the other issue that Judge Kearns was asking about, I thought that she said in her affidavit that investigations into absences, along with any discipline from that, are usually handled differently than they were handled for her. Your Honor, I don't have her affidavit handy. There were a number of things, as you will know, in the defendant's motion, to the defendant's recovery to support the motion for summary judgment that Ms. Patterson's 251 paragraph affidavit included a lot of information and data that was not raised in her deposition that had not been produced in discovery and that contradicted what she said. But there's no sham finding or anything of that nature by the district court, is there? There was not because the district court ruled on other grounds, but that was raised that did not be considered and the court actually did not consider any of this additional stuff, and the court had previously entered a discovery order saying that Ms. Patterson's, that any document not presented in discovery or information presented in discovery, couldn't be relied upon because of significant issues that Georgia Pacific had getting information and documents from Ms. Patterson. But why isn't that, why isn't that a really good reason if we disagree about the basis on which the district court disposed of this case to send it back for the district court to make the first determinations on these issues? Because that's just one of the many issues that exists as to why Ms. Patterson's claim should, why summary judgment was proper. In addition to that, we have what counsel kept saying was that Ms. Patterson told her prior employer of discrimination related to pregnancy, and that's not the case. Ms. Patterson actually testified in the Memorial Hermann Deposition, and that's an appellee supplemental appendix volume one at pages 61 and 67, that she advised them not to do anything to these women because of the FMLA. And that's consistent with what she actually told her employer here, that she was at a deposition for FMLA. Her words were something to the effect of, at first she didn't tell us why she was at a deposition, and then she went on to tell, to quote, she shared with him it was for three ladies who were out on FMLA, end quote, and that's an appellee supplemental appendix volume three at 73. So Ms. Patterson didn't even believe that anything involved Title VII. With her prior employer, she was only concerned with the FMLA. Here she told us it was the FMLA, and so to say that she engaged in protected activity under Title VII or that Georgia Pacific and ARC terminated her because of Title VII, or her going against, or speaking out against conduct protected by Title VII, by her own testimony, Georgia Pacific had no idea. And by her own testimony, when she was opposing conduct in Memorial Hermann, it wasn't under Title VII, it was under the FMLA. So that lack of causation for the prima facie case of discrimination is another, of retaliation, is another grounds. In addition to Ms. Patterson's claims here exceeding the scope of her EEOC charge, this court has made clear that a plaintiff's judicial complaint is limited by the scope of the EEOC investigation, which can reasonably expect it to grow out of the chart of discrimination. In her EEOC charge, Ms. Patterson stated, quote, that the plaintiff's I have been discriminated against on the basis of my race, end quote, end quote, I have also been subject to unlawful retaliation for my prior opposition to complaints of and participation against race discrimination, end quote. And a reasonable EEOC investigator would not have ample notice to investigate and consider a claim for pregnancy retaliation based on the Memorial Hermann deposition, because when the deposition was fresh in her mind, Ms. Patterson rejected and effectively disavowed it as a reason for termination, focusing instead on what she said was her opposition of race discrimination and hiring at Georgia Pacific. Checking the retaliation box doesn't bring that deposition within the scope of the charge, when it's clear that Ms. Patterson, who was represented by counsel when she filed at the EEOC stage, checked that box because of alleged race-based retaliation. She can't now pour in her pregnancy included a couple paragraphs about being fired because she had testified, did she not? She included, your honor, in the EEOC charge, she included two, a reference to two depositions, a workers' comp deposition, and then the Memorial Hermann deposition. And then she does include a few sentences regarding her discussion with Mr. Hawkins about the deposition in Memorial Hermann, and then immediately pivots back to the fact that she felt that she was terminated in retaliation for speaking out against these two employees. That's an allegation that she was retaliated against, is it not? Well, that was it. No, that her allegation immediately after mentioning the depositions, she then expressly states that I was terminated. I'm sorry, counsel. I thought we were talking about whether she raised it in the EEOC complaint or not, are we? Well, we were talking about whether her current claims are beyond the scope of the EEOC charge. And we know that that is what a reasonable investigator would have had ample notice to investigate and consider. And based on just the totality of the charge, a reasonable investigator would not have thought there was a pregnancy retaliation plan because after talking about those depots, which she raised in the context of the plant manager supposedly coming after her. I thought the EEOC charge, I thought she said that she had given a deposition in a pregnancy discrimination lawsuit against her former employer. Is that true, yes or no? She did testify that she... And that Hawkins, who was making the decision to terminate her later, told her that her testifying against her employer, quote, made things clear, end of quote, to him. She included that in the EEOC complaint. Right? Yes, your honor. She did. And we have held, have we not, that it exhausts the claim for EEOC purposes if the pro se person or the non pro se person includes in the complaint to the EEOC facts from which it should be inferred that there was retaliation or discrimination, haven't we? Yes, your honor. But I would say that that's not what exists here because she then immediately pivots back to those two employees that she claims for race discrimination and then says, quote, I also believe that I was discriminated against and retaliated against for participating and imposing race discrimination. Multiple times... What does also mean, counsel? Because she said, I have been discriminated against based on my race. I have also been... No, no, no. I'm sorry. Counsel, counsel, please. What does the word also mean? Oh, your honor, it means in addition to, and here's... So she said, in addition to my retaliation claim, I feel as though, right? Not quite, your honor. She said, in addition to my race discrimination claim, I feel like I have a race retaliation claim. So she said, so not pregnancy. It said, in addition to race discrimination, I also have race retaliation. That's what those sentences... Was the phrase pregnancy or word pregnancy or phrase pregnancy discrimination mentioned in the EEOC complaint she filed? She did mention pregnancy in the EEOC charge briefly. She did not check any boxes related to it. She only checked race and retaliation and then said that the retaliation was for race. Briefly, your honor, going back to what Ms. Patterson's counsel said regarding the manager role and the participation clause not being addressed, this court focused on the opposition clause and everyone considered it to be an opposition clause case because during the numerous discovery disputes, during everything else in Ms. Patterson's complaint, she said she engaged in a protected activity of opposing pregnancy discrimination. And so that's why the court and everyone is focused on the opposition. While Ms. Patterson did mention all of the entirety of the clause in her opposition to our motion for summary judgment, she did not then explain how her conduct fit any. She just said, generally, in a catch-all, that I have engaged in protected activity, period. But I will return back to the point I made earlier that both in her Memorial Hermann deposition and in her definition in this case, she testified that she felt what she was opposing was FMLA retaliation. And so in her own mind, prior to filing this complaint, she never considered herself to have been engaged in protected activity under Title VII. With regard to the manager role, counsel also noted that several, there's no precedential decision that has rejected the manager role. If this court were to adopt Brush, it would be in good company. Several clarifications on the scope of the protected activity have been recognized by other courts, including in published decisions. EEOC versus HBE court said the employee must, quote, step out of their role and do more than, quote, merely alert management of potential violations of the law. That's an Eighth Circuit published decision. In Collazo v. Bristol-Myers-Squibb, the First Circuit said, quote, that they assumed without issue that similar requirements apply in the Title VII context. That is that to engage in protected activity under Title VII's retaliation provision, an employee must step outside his ordinary employment role of representing the company and take action adverse to the company, end quote. And in the Second Circuit case of Littlejohn, they held, quote, to the extent an employee is required as part of her job duties to report or investigate other employees' complaints of discrimination, such reporting or investigating by itself is not a protected activity. And I know, Your Honors, that I am at time. And so with my remaining time, I would just ask the court to affirm that this report is granted summary judgment to Georgia-Pacific and ARC on any of the numerous grounds of lack of pretext, collation, exceeding the scope of the EEOC charge, or that the manager ruled by adopting brush. Thank you, Your Honors. Thank you, counsel. Mr. Kastorf. I think you reserved about three minutes from the last time, plus your other three. So you've got six minutes. Thank you, Your Honor. Subject to the court's questions, I want to address some factual issues that were raised during opposing counsel's arguments. First, regarding severance and outplacement assistance for terminated employees. This court is correct. Ms. Patterson's page 15, that in her experience as a HR manager, severance and outplacement services were not offered to other employees who were terminated for cause. She also, on page 15, gives an example of a specific employee that she can identify by name who did not receive such assistance. And on page 14, she explains that when she requested documents and discovery that would have shown the circumstances under which severance was applicable, they weren't produced, which seems like an issue that would need to be resolved by the district court prior to this court affirming on alternative grounds. On the question of some of the investigation to her other alleged misconduct, specifically attendance, on pages 25 and 26 of that declaration, she explains that in her experience as a human resources manager, when Georgia Pacific is reviewing employees for attendance, they look at a full year of attendance patterns, which they did not do in her case. She also explains that they do not use badge readers as a valid means of tracking whether an employee is engaged in attendance, and they did rely solely or nearly exclusively on badge readers in her case. Regarding the question of whether she apprised her employer that she was asserting she was engaged in opposition to protected activity, it is true that in her also mentions it involves pregnancy discrimination. And in her declaration, she said she testified, she told her employer, she testified on behalf of women who were fired when pregnant. This conduct is violative not only of the FMLA, but of Title VII. And so if the Georgia Pacific terminated her for her attempts to help those individuals or for opposing that conduct, if the conduct is illegal under both FMLA and Title VII, then it would constitute retaliation against protected activity. The court also had some questions about the scope of the EEOC charge. As Judge Carnes stated, this court held in Gregory that the EEOC complaint must merely apprise the EEOC of the possibility that she could be asserting a particular claim. It does not need to correctly state the legal elements of that claim. It needs to include facts from which an EEOC investigator could determine that such a claim warrants investigation. On that EEOC form, Patterson, in addition to checking the race box on the form, also checked the retaliation box on the form. It's true that at one point in the document, she refers to race retaliation, but there are not separate check boxes on that form for race retaliation and pregnancy retaliation. It's not as if she could have checked that box multiple times to indicate she had multiple claims. She clearly flagged for the EEOC that she was bringing a retaliation charge. She also has two full paragraphs about her deposition, including specifying that it was given, quote, in a pending federal Title VII pregnancy discrimination case against her employer, and that she, quote, aided the plaintiff employee in that matter. So even if it is the case that much of the document discusses race retaliation, she very clearly flagged for the EEOC that the deposition involved, quote, pregnancy discrimination. In addition, she stated in that document that her employers were angry at her for participating in the matter and expected her to lie on behalf of her previous employer, which again would reasonably apprise an EEOC investigator that she's asserting a retaliation claim related to that conduct. And if the court has any other questions about the factual record or anything else, I'm happy to answer. Thank you, Your Honors. And we'd ask that the court reverse and remand for this case to proceed to trial. All right. Thank you, counsel. And Mr. Kastorf, I note that you were court appointed for Ms. Patterson under Addendum 5. We really appreciate your services and your work in this case. Thank you both and have a great rest of tomorrow. Thank you. Thank you, Your Honors.